UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
JOHN DUFFY AND KAREN DUFFY,        :
                                   :
                Plaintiffs,        :
                                   :   Civ. Action No. 16-4453 (FLW)
v.                                 :
                                   :
WELLS FARGO BANK, N.A.,            :   **OPINION**
                                   :
                Defendant.         :
_____:

**WOLFSON, United States District Judge**:

Plaintiffs John Duffy ("Mr. Duffy") and his wife, Karen Duffy ("Karen" or "Ms. Duffy") (collectively, "Plaintiffs"), filed this Complaint against Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo"), in which they assert various state and federal claims arising from an underlying state foreclosure proceeding that resulted in a final judgment issued against Plaintiffs. In lieu of an answer, Defendant moves for dismissal, under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Plaintiffs' claims are precluded by, *inter alia*, the *Rooker-Feldman* doctrine. Alternatively, Defendant moves to dismiss the Complaint on the basis that Plaintiffs have failed to sufficiently plead facts in support of their claims. For the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED** with respect to Counts Four through Eight, as these claims are precluded by *Rooker-Feldman*; however, the Motion is **DENIED** with respect to Counts One and Two.

**BACKGROUND**

On June 30, 2010, Mr. Duffy and his sister, Catherine Duffy (collectively the "Duffys"), entered into a $309,320.00 Note with WCS Lending, LLC ("WCS"), a Florida Limited Liability Company. Certification of Aaron M. Bender, Esq. ("Bender Cert."), Ex. A. The Duffys, on that

1

same day, also entered into a Purchase Money Mortgage (the "Mortgage") with Mortgage Electronic Registrations Systems, Inc. ("MERS"), as nominee for WCS. Bender Cert., Ex. B. The Mortgage was secured by the property located at 134 Waterworks Road, Freehold, New Jersey 07728 (the "Property"), which was co-owned by the Duffys. Bender Cert., Ex. B.

On March 23, 2012, MERS assigned the Mortgage to Wells Fargo, and the transaction was recorded in the Monmouth County Clerk's Office. Bender Cert., Ex. C. As a result of encountering financial difficulties, the Duffys were unable to make payments on the Mortgage, thereby causing it to enter default. Bender Cert., Ex. D. In turn, on November 19, 2012, Wells Fargo filed a foreclosure complaint against the Duffys in the Monmouth County Superior Court, wherein Wells Fargo sought to repossess and sell the Property in an attempt to satisfy the remaining balance due on the Mortgage. Bender Cert., Ex. D. These facts are not in dispute.

On September 23, 2013, Catherine Duffy purportedly transferred her entire interest in the Property to Mr. Duffy through a Quitclaim Deed. Compl. ¶ 18, Ex. B. According to Plaintiffs, Catherine Duffy became estranged from her brother. Shortly thereafter, on October 11, 2013, Plaintiffs, Mr. Duffy and his wife, Karen, filed a loss mitigation application (the "Application"), in which Plaintiffs solely provided their own personal and financial information; however, Wells Fargo denied the Application, as it did not include Catherine Duffy's signature. Compl. ¶¶ 19-22. On February 24, 2014, Plaintiffs appealed the denial, on the basis that Catherine Duffy was "estranged, unemployed, and residing in Mexico," and requested that Wells Fargo approve their loss mitigation application, despite the absence of Catherine Duffy's signature. Compl. ¶ 23, Ex. C.

Thereafter, on April 1, 2014, Wells Fargo, in a letter addressed to "JOHN DUFFY" and "CATHERINE V DUFFY," informed the Duffys that they were approved for a Home Affordable

Modification ("HAMP") Trial Period Plan (the "TPP"): "Based on our telephone conversation and the financial information you provided, we would like to offer you an [FHA HAMP TPP]." Compl., ¶ 25, Ex. D.[1] In order to accept the terms and conditions of the TPP, the letter instructed that the Duffys must comply with the instructions provided therein: "To accept this offer . . . please send in your first monthly trial period payment.[2] Also, please sign and return a copy of the 'FHA HAMP Trial Plan Terms and Conditions' document that is enclosed in this package." Compl., ¶ 25, Ex. D. Plaintiffs assert that they agreed to be bound by the TPP, because they performed its terms by submitting the monthly trial payments thereunder. Compl., ¶ 28.

On August 20, 2014, Wells Fargo sent Plaintiffs a Loan Modification Agreement ("Final Agreement 1"). Compl., ¶ 29. The Final Agreement was intended to amend and supplement the Mortgage, and it contained various signature lines under which the names "John Duffy" and "Karen Duffy" were displayed. Compl. ¶ 29, Ex. E. The Final Agreement was signed by Plaintiffs, and allegedly returned to Wells Fargo; however, Wells Fargo maintains that there was an error in the execution of Final Agreement 1. As a result, on January 12, 2015, Plaintiffs signed an identical Agreement ("Final Agreement 2"), which, according to Wells Fargo, was also executed incorrectly. Compl. ¶¶ 32-36. Plaintiffs allege that they were then presented with a new agreement

---

[1] Plaintiffs, in their Complaint, inconsistently assert that they—John and Karen—were approved for a HAMP TPP, "notwithstanding the absence of Catherine from their application . . . ." Compl. ¶ 25. As explained above, the letter, in which Wells Fargo offered Plaintiffs a HAMP TPP, was explicitly addressed to both John Duffy and Catherine Duffy, and required them to return documentation with both their signatures. Compl., ¶ 25, Ex. D. Despite this discrepancy, the Court's decision does not hinge upon this fact.

[2] Pursuant to the terms of the TPP, the Duffys were required to submit three monthly trial period payments for the months of May, June, and July of 2014. Compl., ¶ 25, Ex. D. Plaintiffs maintain that they complied with these requirements, and continued to submit monthly payments in accordance with the TPP until August 1, 2015. Compl. ¶ 50.

requiring, for the first time, the signature of Catherine Duffy ("Final Agreement 3"). Compl. ¶¶ 38-39. However, Plaintiffs did not return Final Agreement 3 because it required the signature of Catherine.

On July 28, 2015, in a letter addressed to the Duffys, Wells Fargo denied the Loan Modification Agreement, because it was not signed by Catherine: "At this time, you do not meet the requirements of this program because . . . we have not received your signed modification agreement." Compl. ¶ 52, Ex. F. On August 17, 2015, Plaintiffs, once again, filed an appeal of denial, wherein they maintained that Plaintiffs performed under the TPP, and entered into a Final Agreement with Wells Fargo. Compl., ¶¶ 53-54. Thereafter, on May 12, 2016, Wells Fargo informed Plaintiffs that the appeal was still under investigation. According to Plaintiffs, Wells Fargo did not render a decision in response to the appeal; rather, they were instructed by Wells Fargo to file a new loss mitigation application. On May 17, 2016, Plaintiffs resubmitted a loss mitigation application, which Wells Fargo denied on the following day. Compl. ¶¶ 58, 61, Ex. I. During the pendency of Plaintiffs' last appeal to Wells Fargo, the State Court, on November 19, 2015, granted Wells Fargo's application for final judgment in the foreclosure action. Bender Cert., Ex. F. On July 25, 2016, after the initiation of this suit, Plaintiffs filed a motion to stay the state court's final judgment of foreclosure, in which they claimed: "Wells Fargo has refused to honor the agreed-upon terms of a signed loan modification agreement. [Plaintiffs] have filed a federal lawsuit against Wells Fargo in the District Court of New Jersey and are requesting a stay of the sale to provide an opportunity to have the matter settled." Supplemental Certification of Aaron M. Bender, Esq., Ex. A.[3]

---

[3] The Court is not aware of whether Plaintiffs succeeded in staying the foreclosure proceeding; indeed, neither party included the state court's decision in this regard. Nevertheless,

On July 22, 2016, Plaintiffs filed this instant eight-count Complaint[4] against Wells Fargo. Under the first two Counts of the Complaint, Plaintiffs assert claims under the Real Estate Settlement Procedure Act ("RESPA"). Specifically, in Count One, Plaintiffs allege that Wells Fargo acted in violation of 12 C.F.R. § 1024.41(e) by "unilaterally and wrongfully deem[ing Plaintiffs] to have rejected the HAMP permanent modification agreement . . . despite the fact that [Plaintiffs] had made any necessary payments in compliance with the terms of the TPP and properly executed and returned [Final Agreement 1 and Final Agreement 2] . . . . " Compl. ¶ 80-81. In Count Two, Plaintiffs also allege that Wells Fargo acted in violation of 12 C.F.R. § 1024.41(h) by failing "to provide a response to [Plaintiffs'] Appeal within the thirty (30) day timeframe," as is required under RESPA. ¶ 98.

In Count Four, Plaintiffs bring a claim under the New Jersey Consumer Fraud Act ("NJCFA"). Specifically, Plaintiffs allege that Wells Fargo acted in violation of the NJCFA "by engaging in an unfair and deceptive act or practice by using fraud, deception, and misrepresentation . . . . " Compl. ¶ 110. As an example of such fraudulent behavior, Plaintiffs assert that Wells Fargo "wrongfully denied the HAMP Final Modification to which [Plaintiffs] were entitled and under which they had dutifully performed so as to move towards foreclosure on [Plaintiff's] home, or in the alternative to collect payments under the trial plan under false pretense." Compl., ¶ 110.

In Count Five, Plaintiffs assert a claim for breach of contract. In that claim, Plaintiffs allege that Wells Fargo "offered [Plaintiffs] a final HAMP loan modification by and through the issuance

---

even if Plaintiffs' motion to stay were granted, the state court's judgment of foreclosure in favor of Defendant would remain valid and final for the purposes of this motion.

[4]  Although Plaintiffs assert eight causes of action against Wells Fargo, the Complaint does not contain a Count Three.

of Final Agreement #1," which [Plaintiffs] accepted by signing and returning the Agreement to Wells Fargo. Compl. ¶¶ 122-123. However, Plaintiffs claim the Agreement was breached when Wells Fargo "sought to alter the terms of Final Agreement #1, and #2 for that matter, by requiring [, for the first time,] Catherine's signature." Compl. ¶ 124. Relatedly, in Count Six, Plaintiffs allege a violation of the covenant of good faith and fair dealing, because, in breaching the terms of the Agreement, Wells Fargo "acted in bad faith, dishonestly, and with improper motive to injure the rights of Plaintiffs." Compl. ¶ 131.

In Count Seven, Plaintiffs bring a claim of estoppel, alleging that because Wells Fargo "voluntarily engaged in conduct with the intention that it would be acted upon by [Plaintiffs] or under such circumstances that a reasonably prudent person would suppose that it was intended to be acted upon as true." Compl., ¶ 135. In support, Plaintiffs allege that Wells Fargo "induced [Plaintiffs] into making temporary modification payments while [Wells Fargo] had no intention of accepting and engaging [Plaintiffs] in long term loss mitigation plan and without any good faith efforts to reach a permanent loan modification." Compl., ¶ 138.

Finally, in Count Eight, Plaintiffs assert a claim of common law fraud against Wells Fargo. Specifically, Plaintiffs allege that "[t]he misrepresentation knowingly made by [Wells Fargo], namely that Catherine's signature would not be needed on the HAMP permanent agreement, caused [Plaintiffs] to make TPP payments to [Wells Fargo]," and, as a result, Plaintiffs suffered damages. Compl., ¶ 144-147.

On December 11, 2016, Defendant filed the instant motion to dismiss, in which they argue that Plaintiffs' Complaint is barred by the *Rooker-Feldman* Doctrine, *Younger* Abstention Doctrine, *Colorado River* Abstention Doctrine, the New Jersey Entire Controversy Doctrine, *res judicata*, and collateral estoppel. According to Defendants, Plaintiffs bring this action in an attempt

6

to re-litigate the foreclosure action in state court, which was already decided in favor of Defendant. In the alternative, Defendants seek to dismiss the Complaint on the basis that Plaintiffs have failed to allege facts in support of their claims. In their Opposition, Plaintiffs argue that their claims are not barred, because they are not requesting this Court to overturn the validity of the foreclosure action; rather, Plaintiffs seek an award of damages, which, if granted, would not undermine the state court judgment. In that regard, Plaintiffs argue that the aforementioned doctrines are inapplicable, because the complained-of conduct by Defendant occurred after the state court entered its foreclosure judgment.

## DISCUSSION

**I.    Standard of Review**

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim

is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (internal quotation marks and citation omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief.") (internal quotation marks and citation omitted).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations marks and brackets omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (internal quotation marks omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (internal quotation marks and brackets omitted).

## II. The *Rooker-Feldman* Doctrine

First, Defendant argues that the Court lacks subject matter jurisdiction over Plaintiffs' claims under the *Rooker-Feldman* Doctrine, because "this Court cannot conduct an appellate-like review over the state court ruling." Defendant's Motion to Dismiss Plaintiffs' Complaint ("Def.'s Motion to Dismiss"), at 11.

"The *Rooker-Feldman* doctrine strips federal courts of jurisdiction over controversies that are essentially appeals from state-court judgments." *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (internal quotation marks and citation omitted). Stated differently, "*Rooker-Feldman* . . . is a narrow doctrine, confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* (internal quotation marks and citation omitted); *see Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005).

In order for the *Rooker-Feldman* doctrine to deprive a federal court of subject matter jurisdiction, the Third Circuit has held that four requirements must be satisfied: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (alterations in original) (citing *Exxon Mobil Corp.*, 544 U.S. at 284). The Third Circuit has explained that "[t]he second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim, or whether the newly raised claims are so inextricably intertwined that a "favorable decision in federal court would require negating or reversing the state-court decision." *Great W. Mining & Mineral Co.*, 615 F.3d at 165, 170 n.4; *see In re Madera*, 586 F.3d 228, 232 (3d Cir. 2009); *In re Knapper*, 407 F.3d 573, 581 (3d Cir. 2005).

Here, at the outset, the Court finds that the first and third requirements of *Rooker-Feldman* are easily satisfied. For instance, Mr. Duffy's interest in the Property was relinquished on November 19, 2015, when the state court entered a final judgment of foreclosure against him.

Instead of filing an appeal to the Appellate Division, Plaintiffs, in response, brought this action against Wells Fargo on July 22, 2016, approximately eight months after the state court rendered a decision. Accordingly, the state court judgment was clearly issued prior to the filing of this suit in federal court, and, because Defendants obtained a judgment of foreclosure, Plaintiffs are state court losers. *See Great W. Mining & Mineral Co.*, 615 F.3d at 166.

Before turning to the remaining elements of *Rooker-Feldman*, the Court will address a threshold argument that Plaintiffs raise in their Opposition. Specifically, Plaintiffs contend that *Rooker-Feldman* is inapplicable here, because they are not attacking the validity of the state court's foreclosure judgment; instead, Plaintiffs maintain that they are seeking an award of damages. Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss ("Pls.' Opp'n"), at 10. According to Plaintiffs, the Court may grant such an award, because it would not conflict with or overturn the state court's foreclosure decision. Pls. Opp'n, at 10. This argument, however, is without any merit.

Although Plaintiffs seek an award of monetary damages, this does not necessarily preclude an application of the *Rooker-Feldman* doctrine. *See Laychock v. Wells Fargo Home Mortg.*, 399 Fed. Appx. 716, 718 (3d Cir. 2010) (affirming the district court's conclusion that claims for money damages, which were predicated on an alleged wrongful foreclosure, should be dismissed under the *Rooker-Feldman* doctrine because the requested relief required the district court to determine that the state court erroneously entered judgment); *see also Zoglauer v. Smith*, 182 F.3d 923 (7th Cir. 1999) (stating that "the *Rooker-Feldman* doctrine applies equally to claims for monetary damages and requests for injunctive relief."); *Willoughby v. Zucker, Goldberg & Ackerman*, LLC, No. 13-7062, 2014 U.S. Dist. LEXIS 81976, 2014 WL 2711177, at *6 (D.N.J. Jun. 16, 2014) (stating that "the form of relief is not dispositive to the application of the *Rooker-Feldman*

Doctrine."). Rather, because certain of Plaintiffs' claims, in which they seek an award of monetary damages against Wells Fargo, can be construed as an implicit attack on the state court foreclosure judgment, the Court finds that the *Rooker-Feldman* doctrine is applicable without regard to the type of relief sought. *See Great W. Mining & Mineral Co.*, 615 F.3d at 166.

With respect to the second and fourth requirements, the Third Circuit has found that the *Rooker-Feldman* doctrine applies when a mortgagor challenges the judgment in his or her New Jersey foreclosure action. *See In re Madera*, 586 F.3d 228, 232 (3rd Cir. 2009) (when confronted with a post-foreclosure federal claim for rescission of a mortgage, the Third Circuit held that the rescission claim was inextricably intertwined with the state court's foreclosure judgment, since "a favorable decision for the [plaintiff] in the federal courts would prevent the [state court] from enforcing its order to foreclose the mortgage."); *In re Knapper*, 407 F.3d at 581 (a federal claim for absence of personal jurisdiction in the underlying state court action is barred by *Rooker-Feldman* because plaintiff "can only prevail if a federal court concludes that the state courts' default judgments were improperly obtained."); *see also Great W. Mining & Mineral Co.*, 615 F.3d at 170 n.4.

The Third Circuit has explained that a court must examine the gravamen of the complaint to determine whether the "claims are in essence an attack on the state court judgment of foreclosure." *Gage v. Wells Fargo Bank, N.A.*, 521 Fed. Appx. 49, 51 (3d Cir. 2013) (concluding that the plaintiff cannot evade the *Rooker-Feldman* doctrine, since the "complaint reveals the nature of [the plaintiff's] claims against Wells Fargo: the bank had no right to foreclose on the property and therefore committed 'criminal acts' by enforcing the foreclosure judgment . . . ."); *see In re Madera*, 586 F.3d at 232. In fact, courts in this district have consistently found that the *Rooker-Feldman* doctrine prohibits claims in a federal action that challenge the validity of the

mortgage or the right to foreclose, since such claims effectively seek to negate or reverse the state court judgment of foreclosure. *See Dunbar v. Nationstar Mortg.*, LLC, No. 16-4259, 2016 U.S. Dist. LEXIS 158350, 2016 WL 6804874, at *2 (D.N.J. Nov. 16, 2016) (holding that the court lacked subject matter jurisdiction, since "*Rooker-Feldman* prohibits the Court from exercising jurisdiction over Plaintiff's statutory and common law claims challenging the validity of the loan agreement and Defendants' right to foreclose."); *Lewis v. PennyMac Corp.*, No. 16-1514, 2016 U.S. Dist. LEXIS 65329, 2016 WL 2901707, at *3 (D.N.J. May 18, 2016) (concluding that the court did not have jurisdiction, under the *Rooker-Fel*dman doctrine, because "[t]he gravamen of Plaintiff"s Complaint is that Defendants had no right or standing to foreclose on the Property."); *Siljee v. Atl. Stewardship Bank*, No. 15-1762, 2016 U.S. Dist. LEXIS 63257, 2016 WL 2770806, at *5 (D.N.J. May 12, 2016) (holding that the *Rooker-Feldman* doctrine barred a breach of contract claim because "[i]ts essence . . . is that the mortgage is invalid or that Atlantic had no standing to assert it.").

Significantly, Plaintiffs, on this motion, do not contend that they were unaware of the fact that Wells Fargo filed a foreclosure action to take possession of the Property on November 19, 2012, or that they never received notice of the foreclosure action, prior to the state court's entry of final judgment three years later on November 19, 2015. Nor do Plaintiffs argue that they were prevented from participating or raising any affirmative defenses or counterclaims against Wells Fargo, during the course of state court foreclosure proceeding. To the contrary, the record indicates that Plaintiffs were capable of participating in state court, as they were represented by counsel around the time the foreclosure action was pending, but inexplicably, Plaintiffs did not participate

in the action.[5] Rather, here, Plaintiffs argue that the *Rooker-Feldman* doctrine is inapplicable, because the complained-of conduct occurred "*after* Wells Fargo had obtained its final foreclosure judgment against Plaintiffs." Pls.' Opp'n, at 10. And, tellingly, Plaintiffs' arguments as to why their federal Complaint does not collaterally attack the state court's final foreclosure judgment are solely confined to their RESPA claims. Pls. Opp'n, at 17-20. Indeed, Plaintiffs do not address why the remainder of the counts asserted in the Complaint are not barred by *Rooker-Feldman* except for the RESPA-related claims.

In the instant mater, the Court finds that the majority of Plaintiffs' claims, except for those asserted under RESPA, solely arise from Defendant's conduct that occurred during the course of the three-year foreclosure proceeding, and should have been raised in that action.[6] *See* Compl. Indeed, those claims are "inextricably intertwined" with the state court adjudication such that *Rooker-Feldman* bars them here. For instance, under New Jersey law, a final judgment in a foreclosure action cannot be issued, unless each of the following requirements are satisfied: (1) the note and mortgage are valid; (2) a default occurred; and (3) the defendant has the right to foreclose

---

[5]   Indeed, counsel assisted Plaintiffs in appealing Defendant's denial of loss mitigation. For reasons unbeknownst to the Court, however, Plaintiffs' counsel never made an appearance in the underlying state foreclosure action.

[6]   Admittedly, Wells Fargo denied Plaintiffs' appeal of denial on May 18, 2016, approximately six months after the state court issued a final judgment of foreclosure. However, the timing of this denial does not preclude the application of the *Rooker-Feldman* doctrine on this motion. Indeed, the complained-of conduct attributable to Defendant, which forms the basis of this federal action, occurred during the pendency of the foreclosure action in state court. Stated differently, the wrongful acts allegedly committed by Wells Fargo took place significantly before Wells Fargo obtained its final foreclosure judgment against Plaintiffs in state court. Therefore, Plaintiffs were not precluded from asserting those defenses before the state court prior to the issuance of that judgment.

(which would include its standing by assignment or otherwise). *Siljee*, 2016 U.S. Dist. LEXIS 63257, 2016 WL 2770806, at *6 (citing *Great Falls Bank v. Pardo*, 263 N.J. Super. 388, 622 A.2d 1353, 1356 (N.J. Super. Ct. Ch. Div. 1993)). In light of these foreclosure requirements, Counts Four through Eight, brought in this case, are barred, because they undermine the state court's judgment, *i.e.,* that a default occurred, and that Wells Fargo had the right to foreclose on the Property.

Beginning with Count Four, Plaintiffs bring an NJCFA claim, under which they allege that Wells Fargo engaged in deceptive conduct by wrongfully repudiating Final Agreement 1, so that Wells Fargo could foreclose on the Property. Compl., ¶ 110. However, Plaintiffs' allegations with regard to Defendant's alleged fraudulent conduct essentially challenge the state court's findings, because they assert that Defendants fraudulently obtained the foreclosure judgment. *See Leisure Technology-Northeast, Inc. v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 356, 349 A.2d 96 (App. Div. 1975). Stated differently, Plaintiffs claim that Defendants do not have the right to foreclosure, despite the fact that the state court has held that Wells Fargo may legally take possession of the Property. Plaintiffs' NJCFA claim, therefore, is inextricably intertwined with the state court judgment, and is barred by *Rooker-Feldman*. Similarly, Plaintiffs' claim of common law fraud in Count Eight is also barred, for the same reasons that Plaintiffs' NJCFA claim fails. Specifically, Plaintiffs' allegations in this count—mainly, that Defendant fraudulently induced Plaintiffs to submit monthly trial period payments by falsely representing that Catherine's signature was not required in Final Agreement 1—also attack Defendant's entitlement to the foreclosure judgment in state court. Therefore, Count Eight is precluded by *Rooker-Feldman*.

Moreover, in Counts Five and Six respectively, Plaintiffs assert a breach of contract claim, and a violation of the covenant of good faith and fair dealing, because Wells Fargo allegedly failed

to comply with Final Agreement 1. However, both Counts are barred, as a finding under either one would undermine the state court judgment. Indeed, Plaintiffs, in their Complaint, assert that they accepted the Agreement when they signed and submitted it to Wells Fargo. Compl., ¶ 123. Plaintiffs contend that the parties entered into a valid and enforceable contract to modify the Mortgage terms, which Defendant breached in bad faith by attempting to subsequently change its terms and conditions. However, Plaintiffs assertions in Counts Five and Six are inextricably intertwined with the state court decision, because if these allegations were true, they would overturn the state court foreclosure judgment. Therefore, Counts Five and Six also fail under *Rooker-Feldman*.

With regard to the estoppel claim in Count Seven, Plaintiffs allege that Defendant "should be precluded from asserting rights against the Duffys which might have otherwise existed at law and in equity," because Wells Fargo wrongfully induced Plaintiffs into submitting monthly trial period payments. Compl., ¶ 141. Count Eight, however, is also inextricably intertwined with the state court's judgment, because the state court already determined that Defendant has the right to foreclose on the Property. Accordingly, Plaintiffs are precluded from proceeding against Wells Fargo under Count Eight.[7]

---

[7] To the extent that *Rooker-Feldman* does not divest the Court of subject matter jurisdiction, the Court notes that Counts Four through Eight are barred by the New Jersey entire controversy doctrine. Specifically, the doctrine "requires a party to bring in one action all affirmative claims that [it] might have against another party, including counterclaims and cross-claims, and to join in that action all parties with a material interest in the controversy, or be forever barred from bringing a subsequent action involving the same underlying facts." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 885 (3d Cir. 1997) (internal quotation marks and citation omitted) (alteration in original). In the instant matter, Plaintiffs could have raised their claims against Wells Fargo in the state foreclosure action. For instance, the record indicates that, despite being represented by counsel, who assisted Plaintiffs in filing an appeal of denial, Plaintiffs voluntarily chose not to raise any defenses or counterclaims in the state action. Accordingly, the entire controversy doctrine operates to preclude Plaintiffs from asserting Counts Four through Eight in the federal Complaint.

15

Finally, in Counts One and Two, Plaintiffs assert that Wells Fargo wrongfully determined that Plaintiffs rejected Final Agreement 1, in violation of 12 C.F.R. §1024.41(e)(2)(i), and Wells Fargo failed to respond to Plaintiffs' second appeal within 30 days, as is required under 12 C.F.R. § 1024.41(h), respectively. In these counts, Plaintiffs challenge the manner in which Defendant conducted itself during the foreclosure proceeding. Unlike the previously discussed counts, Plaintiffs RESPA claims do not challenge the validity of the state court judgment. *See Great W. Mining & Mineral Co.*, 615 F.3d at 166 (stating that the *Rooker-Feldman* doctrine does not bar claims where the source of the injury is the defendant's action, not the state court judgment); *see also Siljee v. Atl. Stewardship Bank*, 2016 U.S. Dist. LEXIS 63257, 2016 WL 2770806, at *5 (concluding that the *Rooker-Feldman* doctrine did not bar the RESPA claim because "noncompliance with RESPA does not implicate the validity of the mortgage or Atlantic's standing. It is not inconsistent with the existence of a final judgment of foreclosure."). Therefore, Plaintiffs' RESPA claims are not barred by the *Rooker-Feldman* doctrine because a finding that Defendant violated RESPA would not overturn the state court judgment.

## III. Motion to Dismiss

Alternatively, Defendant argues for dismissal of Counts One and Two, because Plaintiffs have failed to adequately allege their claims under RESPA. Def.'s Motion to Dismiss, at 20-21. Defendant reasons that a violation of RESPA could not have occurred prior to the final judgment, since Catherine Duffy, who "had a vested interest in any modification of [the Mortgage], regardless of whether she signed a quit claim deed or not," failed to sign Final Agreement 1, as was required. Defs.' Motion to Dismiss, at 21 ("It is not a violation of 12 C.F.R. § 1024.41 for Wells Fargo to require all the signatories of the Note and Mortgage to sign the modification agreement."). In arguing for dismissal, however, Defendants do not address Plaintiffs' additional

claim under RESPA, under which they assert that Wells Fargo did not submit a timely response to Plaintiffs' appeal of denial.

RESPA is "a consumer protection statute that regulates the real estate settlement process." *Jones v. ABN Amro Mortg. Grp., Inc.*, 606 F.3d 119, 124 (3d Cir. 2010). Congress enacted RESPA to "insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from . . . certain abusive practices . . . ." 12 U.S.C. § 2601(a). In the instant matter, Plaintiffs have alleged a violation of 12 C.F.R. § 1024.41(e) and 12 C.F.R. § 1024.41(h), which govern the rejection of a loss mitigation application, and the appeals process of a servicer's denial, respectively.

Under 12 C.F.R. § 1024.41(e)(2)(i), "a servicer may deem a borrower that has not accepted an offer of a loss mitigation option within the deadline established pursuant to paragraph (e)(1) of this section to have rejected the offer of a loss mitigation option." Here, Plaintiffs have adequately pled a claim under § 1024.41(e) of RESPA. In their Complaint, Plaintiffs specifically allege that Wells Fargo "extended [Plaintiffs] a HAMP permanent modification agreement," which they then "accepted and executed" on multiple occasions, *i.e.,* both John Duffy and Karen Duffy signed and returned Final Agreements 1 and 2. Compl., ¶¶ 75-76. Nevertheless, as pled by Plaintiffs, Defendant erroneously "deemed the Duffys to have rejected the HAMP permanent modification pursuant to 12 C.F.R. 1024.41(e)(2)(i)." Compl., ¶ 80. While Defendant argues that Catherine did not sign Final Agreement 3, which was issued, according to Defendant, because of purported errors in the execution of the aforementioned Agreements, neither Final Agreement 1 nor 2 appear to have required Catherine's signature; indeed, the signature lines on those two agreements solely provide for the signatures of "John Duffy" and "Karen Duffy." An explanation for the discrepancy between the various versions of the agreements has not been provided by Defendant. But, at this

pleading stage, Plaintiffs' allegations, if taken as true, are sufficient to establish that Defendant abused its discretion under 12 C.F.R. § 1024.41(e). *See Covington*, 710 F.3d at 118 ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief."). Accordingly, Plaintiffs may proceed under Count One of the Complaint.

> Moreover, 12 C.F.R. § 1024.41(h)(4), provides as follows:
>
> Within 30 days of a borrower making an appeal [of denial], the servicer shall provide a notice to the borrower stating the servicer's determination of whether the servicer will offer the borrower a loss mitigation option based upon the appeal and, if applicable, how long the borrower has to accept or reject such an offer or a prior offer of a loss mitigation option.

12 C.F.R. § 1024.41(h)(4). Plaintiffs have also sufficiently pled a claim under this provision of RESPA. Plaintiffs assert that Wells Fargo denied the final modification agreement on or around August 3, 2015. Compl., ¶ 92. In response to the denial, Plaintiffs allege that "[o]n or around August 17, 2015, within thirty (30) days of the date of the Denial, [Plaintiffs], through their attorney Scunziano, faxed an appeal and complaint to [Wells Fargo.]" Compl., ¶ 97. However, Plaintiffs assert that Defendant "did not provide a response to Appeal within the thirty (30) day timeframe required by §1024.41(h)." Compl., ¶ 98. In fact, Plaintiffs aver that Wells Fargo "did not perform an independent review of [its] denial . . . , or if such a review was performed, [Wells Fargo] never stated their determination of such to [Plaintiffs]." Compl., ¶ 99. When construed in the light most favorable to Plaintiff, these allegations adequately establish a violation of 12 C.F.R. § 1024.41(h)(4). Thus, Plaintiffs may also proceed under Count Two of the Complaint.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. Counts Four through Eight are barred by *Rooker-Feldman* and dismissed. On the other hand, Counts One and Two, which Plaintiffs have sufficiently pled, are not barred by the doctrine, and accordingly, are not dismissed.

Date: May 31, 2017

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
United States District Judge